No. 12624

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

IN THE MATTER OF DECLARING JONES AND
PETERSON CHILDREN DEPENDENT AND
NEGLECTED CHILDREN
DIVISION OF CHILD WELFARE SERVICES
DEPARTMENT OF PUBLIC WELFARE STATE OF MONTANA,

                    Petitioner and Respondent,

-vs-

JUDY PETERSON,

                    Respondent and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        V. C. Anderson argued, Billings, Montana

    For Respondent:

        Harold Hanser, County Attorney, argued, Billings,
        Montana
        Thomas H. Mahan argued, Helena, Montana

---

                            Submitted:  June 18, 1975

                            Decided: SEP 9 1975

Filed: 

_____
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Yellowstone County, which declared eight children dependent and neglected and awarded permanent custody and control to the Child Welfare Services, Department of Public Welfare, State of Montana.

Appellant mother, Judy Peterson, is 30 years of age. Five of the children were issue of her first marriage, one is an illegitimate child, and two are the issue of her present marriage to Dale Peterson, whom she married in 1969 in Wyoming. The family came to Billings, Montana, in 1971.

In November 1972, as a result of marital problems in the home, the children were given to the Yellowstone County Welfare Department by a parental agreement for a period of thirty days.

On December 12, 1972, a petition for temporary custody was filed by the welfare department and an order awarding temporary custody of the eight children to the Yellowstone County Welfare Department was granted by the court. A petition for permanent custody with right to consent to adoption of the children was filed on March 20, 1973. On August 16, 1973, the petition was heard by the court.

On October 9, 1973, District Judge Robert H. Wilson entered findings of fact, conclusions of law, order and judgment, which declared the eight children to be dependent and neglected within the meaning of section 10-501, R.C.M. 1947, and awarded permanent care, custody and control to the Child Welfare Services Division of the Department of Welfare of the State of Montana, with the right to consent to their adoption. The mother, Judy Peterson, appeals from that judgment.

Appellant mother presented several issues for review by this Court of which the controlling issue is: Whether the district court abused its discretion in finding the children dependent and neglected and awarding custody to the Child Welfare Services Division, with a right to consent to adoption.

Section 10-501, R.C.M. 1947, defined a dependent and neglected child as:

> "* * * any child of the age of sixteen years, or under that age * * * who has no proper parental care or guardianship * * * or whose home, by reason of neglect, cruelty, or depravity on the part of its parents, guardian, or other person in whose care it may be, is an unfit place for such child, or whose environment is such as to warrant the state, in the interest of the child, to assume its guardianship or support."

Testimony at the permanent custody hearing on August 16, 1973, elicited these facts: The husband in the home, Dale Peterson, was three times committed to the Montana state hospital for the insane by involuntary proceedings. At the time of the permanent custody hearing he was incompetent but was represented at the hearing by his sister, Joanne Martell, who had previously been appointed his guardian ad litem. It was not uncommon for Dale Peterson to maltreat the children. The mother was given help from various agencies in Wyoming and Montana in the fields of food preparation, nutrition, money management, clothing, cleanliness and medical care for the children. Despite this help, the testimony revealed over and over again that the children were not provided proper or sufficient food, clothing, sanitary or medical care even when the latter was seriously needed.

In the opinion of one social worker who had made approximately 45 visits to the Peterson home, the children's cleanliness was the worst he had ever seen. The children often lacked warm clothing in the winter, even though various welfare agencies had repeatedly given the family overshoes, heavy coats, shoes and other clothing.

The combination of the father's behavior and the lack of these basic needs resulted in a psychological-sociological assessment which concluded that most of the children had severe emotional problems. Four persons (a public health and school nurse, a psychiatric nurse, and two social welfare workers) unqualifiedly recommended the children be permanently removed from both parents. After the children were removed from the parents and placed in a receiving home, considerable emotional improvement was noted.

The remaining issues presented for review concern lack of due process as a result of unreasonable delay from the date of the temporary custody and the hearing on the permanent custody petition and whether information obtained by various county agencies is privileged.

Was the eight months delay between the date of the temporary custody order and the hearing on the permanent custody petition such an unreasonable length of time as to constitute a violation of due process? Section 10-503, R.C.M. 1947, (repealed Ch. 328, Laws 1974), provided that when children are removed from their parents in an emergency situation a petition for custody must be filed within 48 hours. In this instance, however, the children were removed from their parents under a thirty day parental agreement at the expiration of which a temporary custody order was obtained.

There was an interval of eight months between the date of issuing the temporary order and the date of hearing on the permanent custody petition. There is no Montana statute requiring a hearing within a given time period. Although the mother was represented by counsel at the hearing and two members of the Yellowstone County Welfare Office testified, the record contains no testimony regarding the reason for the delay or showing fundamental unfairness of such a delay.

- 4 -

During this period the mother had contact with the children several times a week. There is nothing in the record to indicate that a demand for the children or an early hearing was ever made by the mother.

In support of her argument the mother cites a Colorado case, P.F.M. v. District Court In and For the County of Adams, Colo. 1974, 520 P.2d 742. There, a Colorado statute demanded a hearing within 48 hours after the taking of the children. The Colorado Supreme Court held that a hearing had to occur, but that failure to do so within 48 hours did not make the custody proceedings void ab initio. This case does not reach the issue involved here.

The question of whether the information obtained by various county agencies (i.e. the school nurse, a public nurse, and social welfare workers) during the time they worked with the Peterson family, including parents and children, could be used as evidence in a dependent and neglected proceeding is not supported by Montana statutes on privilege communications or case law.

Appellant mother cites the Court to Title 42, U.S.C.A. §602 (a)(9), a federal statute requiring state agencies to provide safeguards which restrict the use or disclosure of in-formation concerning applicants and recipients of welfare. This federal statute creates no privilege of communication be-tween a welfare agency and a welfare client in a proceeding of this nature.

Child custody problems are never easily resolved. How-ever, the children's best interest and welfare, not that of the parents, is the paramount consideration. In re Olson Children, _____ Mont._____, 524 P.2d 779, 31 St.Rep.543; In re Julia Ann Bad Yellow Hair, 162 Mont. 107, 112, 509 P.2d 9, and cases cited therein. We are mindful that ordinarily a child's interests and

welfare will best be served by retaining custody in the natural parents, however, the circumstances of the individual case may require a different result. In re Julia Ann Bad Yellow Hair, supra.

We find no prejudicial error in the record. Review of the entire proceedings reveals that there is an abundance of substantial credible evidence to support the finding and judgment of the district court.

The judgment is affirmed.

--------------------------------
                Justice

We Concur:

------------------------------
    Chief Justice

------------------------------
------------------------------
------------------------------
    Justices.

- 6 -