No. 12398

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

HAROLD T. RICHARDSON,

               Plaintiff and Appellant,

-vs-

HOWARD MOTORS, INC., a corporation,

               Defendant and Respondent.

---

Appeal from: District Court of the Fifth Judicial District,
           Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellant:

        Loble, Picotte, Loble, Pauly and Sternhagen,
         Helena, Montana
        William Sternhagen argued, Helena, Montana

    For Respondent:

        Corette, Smith and Dean, Butte, Montana
        R. D. Corette Jr. argued, Butte, Montana
        Schulz and Davis, Dillon, Montana

---

Submitted: November 27, 1973

Decided: DEC 20 1973

Filed: DEC 20 1973

_Thomas J. Kearney_
                              Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is a damage action for personal injuries suffered by a business invitee in a slip and fall on the showroom floor of an automobile sales and repair agency in Dillon, Montana. The district court of Beaverhead County, the Hon. Frank E. Blair, district judge sitting without a jury, entered findings of fact, conclusions of law, and judgment for the defendant automobile agency. From this judgment, plaintiff appeals.

Plaintiff is Harold T. Richardson, a salesman for a postage meter service, who received injuries in a fall on the showroom floor as he was leaving the premises after a business call. Defendant is Howard Motors, Inc., the automobile sales agency and repair business on whose premises plaintiff fell.

The accident occurred on June 19, 1968, at about 9:30 a.m. Plaintiff entered the premises through a door on the south side of the building for the purpose of doing business with defendant concerning a postage meter. He walked across the showroom floor to a counter where he had a short discussion with the bookkeeper, Mrs. Avis Hoerning. While waiting for Jack Howard, the owner, to return, plaintiff walked around the showroom floor and looked at a car. Thereafter, plaintiff and Howard had a discussion concerning the postage meter and when the discussion was concluded, plaintiff started to leave the premises.

Plaintiff walked in an easterly direction across the showroom floor and upon realizing he was not going in the proper direction to exit through the south door, he made a righthand turn of approximately 90 degrees at which time he fell to the floor. The first statement that plaintiff made after falling was "Oh, those damn leather heels". Plaintiff suffered personal injuries as a result of his fall for which he seeks to recover damages from defendant.

At the time of his fall, plaintiff was wearing shoes which the district court found to be of "an unusual type". Specifically the district court found plaintiff's shoes to have:

> "Leather soles with two or three nailheads pro-
> truding from the leather soles and leather heels
> with two rows of nails completely going around
> the outside edge of the heel, and with a wedge-
> shaped piece of steel that also protruded above
> the leather so that both the nails and the wedge-
> shaped piece of steel would come in contact with
> any surface on which the shoe was placed."

The showroom floor was constructed in 1960 or 1961. It was composed of an asbestos or asphalt tile which the district court found to be "of common ordinary use in homes, and businesses in Montana." Allen Sorenson, a full time employee of defendant, was responsible for its care and maintenance. The last time it had been cleaned and waxed prior to plaintiff's fall was on June 1, 1968, some 18 days prior to plaintiff's fall. At that time the floor was first cleaned by mopping it with a mixture of hot water, ammonia, "Spic and Span", and "Wax-Off". The floor was then twice remopped with hot water only and allowed to dry for about an hour. Then a liquid wax was poured on the floor and the floor was waxed with a hand waxer. It was then allowed to dry for two or three hours and then buffed with a buffer.

On the morning of plaintiff's fall about an hour prior to the accident, Sorenson had dust mopped the showroom floor. At that time he did not see any foreign or unusual substances on the floor. Jack Howard, the owner, and Mrs. Avis Hoerning, the book-keeper, both testified they had not observed any unusual substances on the floor the morning of the accident and that the floor was not slippery. Following the accident, both testified, they observed the place where plaintiff fell and did not find any unusual substances on the floor nor was the floor, in their opinion, more slippery at the place where plaintiff fell. They also testified that to their knowledge no one had slipped or fallen on the floor previously.

Plaintiff testified, at least indirectly, that the showroom floor was slippery at the time and place of his fall. Additionally, plaintiff called as an expert witness a consulting engineer who testified concerning a series of tests he had conducted prior to the trial on various types of tile floor surfaces with reference to their slipperiness and who also conducted tests in the courtroom during the trial on the tile on defendant's showroom floor under substantially similar conditions as those existing at the time of the accident.

The thrust of his testimony was that defendant's showroom floor was in a slippery condition at the time of plaintiff's fall. This opinion was based on tests that he had conducted indicating that the coefficient of friction (the ratio of force required to move a weight on a floor surface) exceeded what he described as the national standard of safety with reference to coefficients of friction on floor surfaces in the United States. This so-called national standard was based on a 1948 research report entitled "Measurement of Slipperiness of Walkway Surfaces" by the National Bureau of Standards in conjunction with the National Bureau of Safety. In a nutshell, this research report fixed a coefficient of friction of .4 as the breaking point between a slippery surface and a nonslippery surface. If a given floor surface has a co-efficient of friction lower than .4 it is slippery, while a co-efficient of friction higher than .4 indicates a nonslippery floor surface. The tests conducted by the witness in the courtroom indicated a coefficient of friction of .235 for defendant's showroom floor surface at the time of plaintiff's fall.

Following trial, the district court entered findings of fact, conclusions of law, and judgment for defendant accompanied by an opinion giving the basis of the decision. In substance, the district judge found that the plaintiff had not come forth with any substantial evidence showing the breach of any legal duty by defendant and found that defendant had used ordinary and reasonable care in the maintenance of its showroom floor; hence no negligence and no liability on the part of defendant.

The controlling issue on appeal is the sufficiency of the evidence to support the district court's findings, conclusions and judgment.

Plaintiff contends that the district court erred in finding that the floor was not slippery; that plaintiff's shoes were unusual; and that defendant breached no legal duty.

At the outset we observe that there is no direct finding by the district court that the floor was not slippery. However, we believe this is necessarily implied in the findings the district court did make and we will so treat it. Admittedly the evidence is conflicting in reference to the slipperiness of the showroom floor. It is the function of the trier of the facts, in this case the district judge, to resolve those conflicts by determining the credibility of the witnesses and the weight to be given their testimony. Our function on appeal is simply to determine whether there is substantial credible evidence supporting the findings. State Highway Commission v. West Great Falls Flood Control and Drainage District, 155 Mont. 157, 468 P.2d 753, and cases cited therein. If there is, the findings will not be disturbed on appeal. Spencer v. Roberston, 151 Mont. 507, 445 P.2d 48, and cases cited therein.

We find substantial credible evidence supporting the district court's implied finding that defendant's showroom floor was not in a slippery condition at the time of plaintiff's fall. The uncontradicted evidence of witness Edward Nurse indicates that asbestos or asphalt tile is a common type floor covering found in many homes, buildings and business places in Montana. The evidence indicates that the care and maintenance of the showroom floor was the duty and responsibility of Allen Sorenson, an employee well qualified by training and experience in the care of defendant's floor since 1965. The evidence shows in detail what was done to the floor prior to plaintiff's fall. The testimony and evidence of witness Edward Nurse indicates the wax used on defendant's floor had no effect on the slipperiness of its

surface on the basis of tests he conducted. The uncontradicted testimony of witnesses Jack Howard and Avis Hoerning indicated that they had observed the showroom floor at the place of plaintiff's fall both before and after the accident and had observed no unusual substances on the floor nor in their opinion was the floor slippery. These same witnesses testified that to their knowledge no one had slipped or fallen on the floor at any time prior to plaintiff's fall.

Directing our attention to the district court's finding that plaintiff's shoes were of an "unusual type" and specifying the particulars of how they were unusual, we likewise find substantial credible evidence supporting this finding. However, we need not examine the supporting evidence on this point in detail as the district court's decision was not based on any contributory negligence of the plaintiff, but on the absence of negligence by defendant. Where, as here, the district court finds no negligence on the part of defendant, the finding is simply surplusage in any event as the questions of contributory negligence or proximate cause need never be reached.

Plaintiff's final contention is that the district court erred in its conclusion that defendant breached no legal duty. Having heretofore found that there is substantial credible evidence supporting the district court's implied finding that the showroom floor was not slippery at the time of plaintiff's fall and having detailed the evidence in support of this finding, the conclusion of the district court that defendant breached no legal duty is inescapable.

Whatever may be said of the expert opinion evidence of plaintiff's consulting engineer, that the showroom floor was in a slippery condition at the time of plaintiff's fall based on tests he conducted relating to the coefficient of friction, it simply created a conflict in the evidence which was resolved against the plaintiff by the district judge as trier of the facts.

Expert opinion evidence is not conclusive of the issue; the credibility of the expert witness and the probative value of his testimony are for the trier of the facts. Putman v. Pollei, 153 Mont. 406, 411, 457 P.2d 776. The following stock jury instruction is commonly given in Montana and sets the correct standard to be applied by a jury in weighing expert opinion evidence and the same criteria apply in cases where the district judge rather than a jury is trier of the facts:

> "The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any matter in which he is versed and which is material to the case. You should consider such expert opinion and should weigh the reasons, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it, if in your judgment the reasons given for it are unsound."

The testimony of plaintiff's consulting engineer clearly indicated that the wax applied to the showroom floor had no effect on the slipperiness of its surface:

> "Q. Yes, so I think it's fair to say, and you have stated before that these tiles from Howard Motors, your coefficient of friction was not any different particularly whether the tiles were waxed or whether they were unwaxed, is that a fair statement? A. Correct.
>
> "Q. OK. A. With the shoe we used.
>
> "Q. Yes, so I take it, Mr. Nurse, that based on that, that we can probably rule out the Duratex wax with regard to whether it made the surface slippery or less slippery, that would be a fair statement? A. In the case of Howard Motors.
>
> "Q. Yes. A. Yes.
>
> "Q. And of course, that's what we are talking about here, so the wax wouldn't really make any difference, is that right? A. We didn't feel it was detectible.
>
> "Q. Right. A. I didn't."

This testimony, coupled with uncontradicted testimony that there was no foreign substance on the floor, and that the floor

had been dust mopped about an hour prior to the accident amply supports the conclusion defendant used ordinary and reasonable care in maintaining its showroom floor and breached no legal duty owing to plaintiff.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.